**FILED**

DEC 3 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

PAUL DOUGLAS BURKE,           )    CASE NO.
Via Carlo Emilio Gadda, 95    )
00143 Rome                    )
Italy                         )
Ph 0039 32 84710110           )
                              )
           Plaintiff,         )    Case: 1:07-cv-02335
                              )    Assigned To : Kennedy, Henry H.
vs.                           )    Assign. Date : 12/31/2007
                              )    Description: PI/Malpractice
AIR SERV INTERNATIONAL, INC;  )
LOUIS BERGER GROUP; THE LOUIS )
BERGER GROUP,INC.             )
                              )
           Defendants.        )    DEMAND FOR JURY TRIAL
_____)



## COMPLAINT

1.    Plaintiff Paul Douglas Burke (hereinafter ''plaintiff'') brings
this action for compensatory and punitive damages based on his
personal injuries against defendants Air Serv International, louis
Berger Group and The Louis Berger Group, Inc. (hereinafter
collectively ''defendants'' and individually as ''Air Serv'', ''LBG''
and ''TLBGI'' respectively). This personal injury action arises out
of severe personal injuries that plaintiff sustained by receiving
five (5) gun shot wounds to his body on February 22, 2004 in
Afghanistan while performing his work duties under a USAID contract
as part of the reconstruction effort as a security officer at the
direction of defendants who failed to obtain a flight permission or
clearance which brought plaintiff into a hostile and restricted air
zone where civilian aircraft were not permitted to fly without prior
permission, and failed to provide security equipment to plaintiff
and the aircraft that he had been transported in to the line of

COMPLAINT

1  severe gun fire.

2  2.    Plaintiff seek damages resulting from his personal injuries
3  including his lost wages, lost employment opportunities,
4  psychological injuries, pain and suffering and permanent injuries
5  based on defendants' negligence; negligent hiring; negligent
6  retention, intentional infliction of emotional distress and punitive
7  damages.

8              JURISDICTION, VENUE, AMOUNT IN QUESTION

9  3.    Jurisdiction    lies    under    28    U.S.C.    1332    as    diversity    of
10 citizenship exists between plaintiff and defendants, who are citizens
11 of a state and citizens or subjects of a foreign state.    Pendent or
12 ancillary jurisdiction also lies on any non-federal claims as they
13 arise    out    of    the    same    transaction    or    occurrence    or    series    of
14 transactions or occurrences as the above claims.

15 4.    The amount in question lies under 28 U.S.C. 1332 inasmuch as the
16 value    of    plaintiff's    claims    exceed    Seventy-Five    Thousand    Dollars
17 ($75,000.00).

18 5.    Plaintiff    was    at    all    times    mentioned    herein    a    citizen    of    the
19 United    Kingdom    who    at    the    time    of    sustaining    his    injuries    was
20 working in Afghanistan in connection with the Bush Administration's
21 attempt    to    rebuild    the    infrastructure    of    Afghanistan,    and    he    is
22 presently residing in Italy.

23 6.    Plaintiff is informed and believes and herein alleges, that at
24 all times herein mentioned, defendant Air Serv International, Inc.,
25 an    entity    that    has    used    various    d/b/a's    including    ''Air    Serve
26 International''    is    a    California    registered    non    profit    entity
27 organized    under    the    laws    of    the    State    of    California    with    its
28 principal    United    States    place    of    business    being    at    410    Rosedale

COMPLAINT                                                                    2

1 Court, Suite 190, Warrenton, Virginia 20187 from where it administers
2 various USAID and other contracts negotiated in the District of
3 Columbia to provide aircraft services and locate aircraft for third
4 parties to use pursuant to commercial contracts in countries like
5 Afghanistan. Air Serv did and continues to do business in the
6 District of Columbia on a continuous and systematic basis.

7 7.    Plaintiff is informed and believes and herein alleges, that at
8 all times mentioned, defendant Louis Berger Group was an affiliate of
9 and/or a d/b/a associated with defendant The Louis Berger Group,
10 Inc., and had its principal place of business at its contract
11 procurement office located at 2300 N. Street NW, Washington DC 20037
12 from where it engaged in the negotiation of contracts to obtain the
13 use of aircraft to service USAID contracts in Afghanistan, including
14 USAID Contract Number 306-C-00-02-00500-00.

15 8.    Plaintiff is informed and believes and herein alleges, that at
16 all times mentioned, defendant The Louis Berger Group, Inc. was and
17 is a corporation organized under the laws of the State of New Jersey,
18 with its principal place of business in New Jersey where it conducts
19 its business from 100 Halstead Street, East Orange, New Jersey and
20 engages in the business of Visualization / Multimedia, Agricultural
21 Planning Management, Architecture, Construction Management, Cultural
22 Resources, Development Economics, Economic Evaluations, Economic
23 Evaluations, Energy, Engineering Design, Engineering Feasibility,
24 Environmental Compliance & Analysis,    Environmental Permitting,
25 Facilities and Space Planning, Financial Feasibility, Environmental
26 Permitting and Geographic Information Systems around the globe.
27 Defendant The Louis Berger Group, Inc. did and continues to do
28 business in the District of Columbia on a continuous and systematic

COMPLAINT                                                                    3

1   basis securing numerous government contracts in the United States
2   Government's effort to rebuild the infrastructure of Afghanistan and
3   is presently registered in the United States Government Central
4   Contractor Registry in the District of Columbia.

5   9.    Plaintiff alleges that at some time around May 23, 2003
6   defendant Air Serv International Inc. and defendant Louis Berger
7   Group entered into negotiations in the District of Columbia and
8   subsequently signed a written contract in the District of Columbia
9   whereby Air Serv International, Inc. agreed to locate, lease and
10  operate two (2) Bell 212 helicopters or similar aircraft for the use
11  of defendant Louis Berger Group for the transport of personnel,
12  cargo and supplies in Afghanistan in Louis Berger Group's
13  performance of its USAID Contract 306-C-00-02-00500-00.    The
14  contract negotiated is entitled "Air Services Contract Between Louis
15  Berger Group and Air Serv International for Afghanistan" and it was
16  subsequently amended on October 1, 2003 (hereinafter referred to as
17  "The Contract".)    The Contract states that "This contract was
18  negotiated in Washington D.C. and the main file with meeting
19  minutes, USAID contracting officer consent, original signed contract
20  and all other back-ups are with the Louis Berger office procurement
21  department in Washington, D.C.".

22  10.    Venue lies within this judicial district pursuant to the
23  provisions of 28 U.S.C. Section 1391(a)(2).

24                          GENERAL ALLEGATIONS

25

26  11.    Air Serv was at all material times in the business of providing
27  air services and support and participating in commercial aircraft
28  lease contracts for profit and locating aircraft internationally.

12.    In entering into The Contract as set forth in Paragraph 8 above, Air Serv agreed to locate, lease, manage and operate two (2) Bell 212 helicopters for the use of defendant LBG, and approved agencies for the transport of personnel, cargo and supplies in Afghanistan in the course of LBG's performance of its USAID contract number 306-C-00-02-00500-00.  Certain duties and legal responsibilities were assigned to the contracting parties under The Contract itself and its Schedule 1.

13.    Under Section 6.2 of the The Contract Air Serv was contractually bound, had a duty to carry out and agreed to carry out certain management responsibilities and be contractually responsible for "recording in writing and keeping a file on the terms of all agreements reached with the government and/or other official agencies in the country of operation."

14.    Under Section 6.3 of the The Contract Air Serv was contractually bound, had a duty to provide and agreed to provide and agreed to be responsible for administering the flight program and the dispatch of the aircraft to meet defendant LBG's requirements. Under Section 6.4 of The Contract Air Serv was contractually bound, had a duty to and agreed to operate the contract aircraft in compliance with the applicable Regulations of Afghanistan. In order to administer the flight program to a safe standard and to dispatch the aircraft to meet the contractual standards, Air Serv was contractually bound, had a duty to and agreed to dispatch the contract aircraft, but only after defendant LBG properly and safely executed its obligations under Schedule 1 of The Contract by providing "security to the aircraft and personnel" under Schedule 1 Section 9.10, and obtaining all "necessary security clearances"

COMPLAINT                                                                5

under Schedule 1 Section 9.11.

15.   Under Section **6.5** of The Contract Air Serv agreed to be responsible for arranging liability insurance of US$20 million per occurrence, including war risks coverage, with LBG being an additional named insured on the obtained policy.

16.   Under Section 6.10 Air Serv was contractually bound, had a duty to be responsible for and agreed to provide dispatch and radio flight following functions supporting the aircraft operation. Also under Section 6.8 Air Serv was contractually bound, had a duty to provide and agreed to be responsible for recruiting, selecting and training personnel in executing the terms of the contract.

**17.** In conjunction with its dispatch and radio flight and following functions, under Schedule 1 Section 9.26 Air Serv was contractually bound, had a duty to provide and agreed to provide "radio watch facility" to the aircraft operation. Additionally, under Schedule 1 Section 9.28 of The Contract Air Serv was contractually bound, had a duty to provide and agreed to provide "Operational Base Equipment" in support of the aircraft operation. Further, as part of these duties and legal obligations, under Schedule 1 Section 9.29 Air Serv was contractually bound, had a duty to provide and agreed to provide " competent and qualified personnel", which would include a qualified and experienced radio technician.

18.   Under Section 6.11 of the Air Services Contract Air Serv had the duty and legal responsibility of ensuring the helicopters were properly maintained.

19.   Under Section 6.6 of The Contract Air Serv was bound, had a duty to and agreed to provide "technical data" and "assistance" to LBG in the performance of LBG's legal duties and responsibilities

under Section 7. These obligations and duties required Air Serv to provide technical data and assistance to LBG and/or TLBGI in LBG's and/or TLBI's Section 7.9 duties in arranging the approval of "flight permissions".

20.    Under Schedule 1 Section 9.3 of the Contract Air Serv was bound, had a duty to and agreed to provide "flight plans".

21.    To execute its contractual duties and obligations Air Serv entered into a contract with Pacific Helicopters of Papua New Guinea and leased two (2) Bell 212 helicopters pursuant to wet aircraft leases whereby pilots were also supplied to fly the helicopters in Afghanistan. At some time in October 2003 the helicopters were mobilized to Afghanistan and were put into service by Air Serv on October 29, 2003 to be used to service LBG and/or TLBGI's needs under USAID contract number 306-C-00-02-00500-00.

22.    To further execute its contractual duties and obligations under The Contract, Air Serv hired Corliss Zylstra as its Afghanistan/Pakistan County Director for which he was annually compensated US$64,583.00, and it hired Geoff Lynch to execute its contractual obligations.

23.    At all material times herein Air Serv dispatched the Bell 212 helicopters before LBG had properly and safely executed its obligations under Schedule 1 Sections 9.10 and 9.11 of the Air Services Contract by providing security to the aircraft and personnel and by obtaining all necessary security clearances.

24.    At all material times herein mentioned, Air Serv failed to provide dispatch and radio flight following functions in support of the aircraft operation pursuant to the Air Services Contract. There was no radio watch facility provided nor did Air Serv ever provide

any operational base equipment in support of the helicopter operation.

25.  At all material times herein mentioned, Air Serv failed to provide competent and qualified personnel to carry out its contractual duties. The personnel hired did not have the minimum level of competency to carry out Air Serv's undertaken contractual duties and obligations nor did the two employees hired have any qualification as a radio technician nor did Air Serv execute its duties to recruit, select and train a radio technician nor other personnel necessary to execute the terms of the Air Services Contract by providing flight following procedures supported by competent and trained personnel and adequate radio communication equipment.

26.  At all material times mentioned herein, Air Serv failed to carry out its contractual duties by giving technical support and assistance to LBG in obtaining flight permissions.

27.  At all material times mentioned herein two helicopters were flown at the direction of Air Serv, LBG and/or TLBGI without flight permission from the respective United States and Afghanistan authorities and was flown into restricted, prohibited and dangerous and hostile air zones and being landed at the direction of Air Serv, LBG and/or TLBGI in prohibited areas of Afghanistan.

28.  Plaintiff is informed and believes and alleges, that at all times mentioned, defendant LBG was an affiliate of and/or a d/b/a associated with TLBGI, and was in the business of procuring USAID and support contracts and subcontracts for the Bush Administration's Afghanistan infrastructure rebuilding effort.

29.  Plaintiff is informed and believes and herein alleges, that at

all times mentioned, defendant TLBGI was in the business of
agricultural management, architecture, and construction and
engineering management, feasibility and analysis around the globe.

30.   In entering into the Air Services Contract as set forth in
Paragraph 8 above, LBG and/or TLBGI agreed to and paid Air Serv an
initial payment of US$342,900.00 as a security deposit, positioning
fee and the first month's fixed rate pursuant to its contractual
duties and approximately US$63,900.00 per month thereafter based on
the presentation of invoices by Air Serv to defendant LBG at LBG's
office in Washington, DC.

31.   Under Schedule 1 Section 9.10 of the Air Services Contract LBG
and/or TLBGI was contractually bound, had a duty to carry out and
agreed to be legally responsible for "security to aircraft and
personnel". Also under Schedule 1 Clause 9.11 LBG and/or TLBGI
agreed to be contractually and legally responsible for "All
necessary security clearances…..radio licenses, operating
permissions". Additionally, under The Contract LBG and/or TLBGI was
contractually bound, had a duty to carry out and agreed to be
legally responsible for providing "operational base equipment" being
a duty that defendant Air Serv also had under this contract.

32.   Even though contractually required to do so, at no time did LBG
and/or TLGBI provide any of the minimally required security
equipment needed to safely and securely operate the two (2)
helicopters in Afghanistan in 2004. No bulletproof blast mats were
ever fitted to the floors and the walls of the cabin of the
helicopters and no bulletproof windshields were ever installed. LBG
and/or TLBGI knew or had reason to know that the two (2) helicopters
were being flown at their direction into hostile environments with

COMPLAINT                                                              9

no flight following and no radio communication because Air Serv had failed to set up the radio communication obligations and had also failed to secure a flight following system. When LBG and/or TLBGI became aware of Air Serv's failure to set up flight following and radio communications, LBG and/or TLBGI continued to retain their services under The Contract, but neither LBG nor TLBGI took any steps to provide security to the helicopters by establishing flight following and a radio communication system.

33.   At no time did LBG and/or TLGBI provide any of the minimally required security equipment to the personnel to be secure and safe while in the helicopters. No bulletproof vests, helmets or face shields were ever provided to any of the personnel who traveled in the two (2) Bell 212 helicopters in Afghanistan.

34.   To execute its duties in being responsible for "security to aircraft and personnel", LBG and/or TLBGI claims it engaged the services of an independent contractor called U. S. Protection and Investigations, LLC ("USPI") of the State of Texas to perform these duties, which was work involving a risk of physical harm to others unless this security work was done carefully and skillfully.

35.   Plaintiff is informed and believes and herein alleges that when LBG and/or TLBGI hired USPI, no due diligence, audit, screening, nor investigation of the background, experience level, suitability, performance background of USPI was undertaken by either LBG nor THLBI even though USPI was being hired as an independent contractor to engage in inherently dangerous activities which could have been performed safely if proper precautions were taken by an independent contractor having the requisite level of experience, skill and knowledge to know that securing the aircraft and personnel

COMPLAINT                                                                    10

required the supply of security equipment and accessories to and a decoloration of the subject helicopters and that security clothing, shields and helmets be provided and made available to the crew, passengers and personnel.

36. Plaintiff is informed and believes and herein alleges that at the time that LBG and/or TLBGI hired independent contractor USPI it was hiring an independent contractor to do work that involved a special danger to others which LBG and/or TLBGI knew or had reason to know to be inherent in or normal to that work in Afghanistan unless security precautions were taken with respect to providing security equipment and accessories to the subject helicopters and security clothing, shields and helmets to the crew, passengers and personnel.

37. Plaintiff is informed and believes and herein alleges, that prior to hiring USPI no investigation was conducted by LBG nor TLBGI to ascertain USPI's knowledge and experience in the field of security work to be done with respect to securing the Bell 212 helicopters and the personnel flying and being transported in these helicopters in an inherently dangerous environment.

38. Prior to February 22, 2004 plaintiff complained to LBG and/or TLBGI's Country Manager in Afghanistan named Jim Myers and also to LBG and/or TLBGI's Fred Chace with respect to LBG and/or TLBGI's failure to secure the two (2) Bell 212 helicopters by having protective security equipment fitted to the helicopters particularly when LBG and/or TLBGI were about to take on a further USAID contract to rebuild schools and clinics throughout Afghanistan and they intended to use the two (2) Bell 212 helicopters in executing that contract. Plaintiff directly stated to Fred Chance that the helicopter could be shot at unless proper security was permitted to

be put in place.  Furthermore prior to February 22, 2004 plaintiff had complained to the aforementioned Jim Myers and Fred Chance regarding the fact that the pilots and personnel and passengers had no security protective bulletproof vests, no face shields nor bulletproof helmets and that there was a need for more ammunition to be provided when undertaking helicopter flights. In a memorandum provided to both Jim Myers and Fred Chace plaintiff complained about USPI's policies and recommended new policies of operation to be used with respect to the schools and clinics contract of LBG and/or TLBGI including the importance of making prior contact with local provincial chiefs, educational officers and provincial police to establish a secure environment before flying into unknown villages.

39.   In the face of the various and repeated complaints by plaintiff with respect to LBG and/or TLBGI's failure to provide security to the aircraft and the personnel to make the aircraft and personnel secure, and plaintiff's complaints about USPI's performance, LBG and/or TLBGI with full knowledge of the potential danger to the human lives of all traveling on the helicopters with lack of any security, nevertheless continued to retain the services of USPI.

40.   On February 9, 2004 Fred Chace requested that two LBG and/OR TLBGI employees be flown to the Village of Thaloqanin, Punjaw District in the Kandahar Province of Afghanistan on February 22, 2004 under LBG and/or TLBGI's schools and clinics USAID contract. Fred Chace also contacted Air Serv to arrange the dispatch of the flight originating in Kabul.

41.   On February 21, 2004 at the dispatch direction of Air Serv and at the request of LBG and/or TLBGI, one of the Bell 212 helicopters departed from Kabul and traveled to South to Kandahar, in the south

east part of Afghanistan. While piloted by Mark Burdoff also on board was plaintiff, Susan Wheeler (an employee of LBG and/or TLBGI) together with a local interpreter named Tariq. The pilot has been directed by Air Serv to fly to the Village of Thaloganin where Susan Wheeler would inspect a well. After arriving in Kandahar the pilot and passengers and plaintiff stayed overnight at the "LBG House" in Kandahar.

42.   Around 8.55 am on February 22, 2004 the pilot, plaintiff and the other passengers departed from Kandahar flying west and located the Village of Thaloganin where the helicopter landed and was located about 10 to 15 minutes from Kandahar. The pilot stayed with the helicopter at the landing location just outside the village, the plaintiff stood in a position between the village and the helicopter and the two passengers went into the village for about 7 minutes for Susan Wheeler to conduct an engineering inspection on a well. The two passengers returned, and they promptly boarded the helicopter along with the pilot and the plaintiff. As the helicopter was about to lift off, with the engine on full power, a round of bullets came through the windshield and the cabin and went into the instrument panel. Then small arms fire came through the cabin and the rounds of bullets shafted the helicopter. As the bullets were coming into the cabin fast and strong the plaintiff and the pilot both started to get out the door on the pilots' side which was the opposite direction from where the line of fire appeared to be coming from.

43.   As plaintiff was about to get out of the right side door he was struck by a 7.62 mm round of bullets which went through his left knee as he was getting out of his seat. The plaintiff then went over the central controls onto the pilot's seat and as he was getting out

COMPLAINT                                                                13

of the pilot's door plaintiff was hit shot in his right shoulder and then plaintiff received another bullet into his back.

44. Plaintiff and the pilot then took cover under the helicopter behind the right skid. The line of fire then changed from the helicopter itself to the pilot and plaintiff. The pilot then put his hand up into the cabin and hit the emergency locator beacon located behind the pilot's seat and a signal that the helicopter was down and in trouble was received in Australia. The pilot also picked up his satellite phone and then went under the helicopter with plaintiff with rounds of bullets were landing all around them.

45. The gunmen then changed their position and bullets starting coming from behind the helicopter. The plaintiff was then shot again, this time in his upper right leg and this wound was so severe that it made plaintiff curl up in a ball. Plaintiff received another gunshot wound to the lower left groin near the base of his genitals. Plaintiff was in unbearable pain and the pilot was attempting to comfort him. Within a few minutes the plaintiff looked over and saw that the pilot, his respected friend Mark Burdoff, had been shot dead right through the head and the plaintiff could see the exit hole where the bullet came out of the back of the pilot's non bulletproof helmet. Plaintiff saw the pilot lying face down in the sand with a heavy stream of blood in a pool around his face.

46. By this time the plaintiff had sustained five (5) gun shot wounds to his body and decided that he should return fire. The plaintiff returned fire with the AK he was carrying and when his ammunition ran out he returned fire with his 9mm pistol. At some point the gun fire ceased (after approximately 1 ½ hours), the interpreter who had found a place of hiding came to assist the

1  plaintiff and pulled him to a trench where they both lay. They both
2  made many attempts to call for help and eventually they were able to
3  make contact with the USPI office in Kandahar which contacted the
4  United States Coalition Forces in Kandahar who immediately
5  dispatched two (2) Apache helicopters to the scene of this ambush
6  which involved approximately 8 minutes of flying time. There were 10
7  Apache helicopters in Kandahar for dispatch on February 22, 2004
8  47.  Plaintiff was then treated and removed by helicopter to
9  Kandahar where he underwent emergency surgery before being flown to
10 Germany undergoing additional surgeries and rehabilitation over a
11 one year period. As a consequence of the injuries sustained by
12 plaintiff, he employed physicians, surgeons, physical therapists,
13 occupational therapists, nurses and other medical personnel and
14 incurred expenses there from and incurred additional expenses
15 traveling to treatment sessions, hospital bills, and pharmacy bills
16 for medications prescribed and other incidental medical expenses.
17 48.  As a consequence of his five (5) gunshot wounds plaintiff has
18 sustained permanent injuries to his health, strength and activity,
19 sever shock to his nervous system, and the permanent lodging of
20 bullet parts in his body, and was caused to suffer extreme physical
21 and mental pain and undergo numerous painful surgeries.
22 49.  Upon receiving the report of the ambush and dispatching
23 emergency help to the scene, the United States Coalition Force
24 Military spokesman in Kandahar reported to LBG and/or TLBGI and Air
25 Serv that they had collectively arranged to have the helicopter
26 involved in the ambush fly into a restricted and prohibited air zone
27 for which neither LBG and/or TLBGI nor Air Serv had sought an
28 operating permit, a security clearance nor a flight permission to

COMPLAINT

15

1  fly over and into the Village of Thaloganin and had they sought such
2  a permission it would have been denied and this illegal helicopter
3  trip would never have been made and plaintiff would never have
4  sustained his injuries.

5  ## FIRST CAUSE OF ACTION
   ## NEGLIGENCE

6  (Against All Defendants)

7  50.  Plaintiff incorporates by reference each and every allegation
8  contained in Paragraphs 1 through 49 as though fully set forth.

9  51.  Defendants Air Serv, LBG and/or TLBGI individually or together
10 owed a duty to plaintiff to exercise reasonable care and diligence
11 in the exercise of their contractual duties pursuant to the Air
12 Services Contract Agreement.

13 52.  Defendants Air Serv, LBG and/or TLBGI individually or together
14 breached their duty when they individually or together negligently
15 and without exercise of reasonable care and diligence failed to have
16 flight following procedures in place and proper radio communications
17 for the helicopter operations in Afghanistan before directing that
18 the helicopter involved in the ambush be flown into the Village of
19 Thaloganin on February 22, 2004.

20 53.  Defendants Air Serv, LBG and/or TLBGI individually or
21 together further breached their duty when they individually or
22 together negligently and without exercise of reasonable care and
23 diligence failed to provide security of the aircraft by not even
24 providing minimal security equipment to safely and securely operate
25 the helicopter by not equipping it with bulletproof blast mats and
26 not having a bulletproof windshield installed.

27 54.  Defendants Air Serv, LBG and/or TLBGI individually or
28 together further breached their duty when they individually or

COMPLAINT                                                          16

1  together negligently and without exercise of reasonable care and
2  diligence failed to provide security of personnel traveling on the
3  aircraft involved in the ambush by failing to provide bulletproof
4  vests, helmets and face shields when the helicopter was flown into
5  the Village of Thaloganin on February 22, 2004.

6  55.   Defendants Air Serv, LBG and/or TLBGI individually or together
7  further breached their duty when they individually or together
8  negligently and without exercise of reasonable care and diligence
9  failed to seek air clearance permission from the United States and
10  Afghanistan authorities - which would have been denied - and flew
11  the said helicopter prohibited air zone by directing that the
12  aircraft be dispatched and actually dispatching the said helicopter
13  to fly into the Village of Thaloganin on February 22, 2004.

14  56.   Defendants Air Serv, LBG and/or TLBGI individually or together,
15  knew, or in the exercise of reasonable diligence and care should
16  have known, that their negligent conduct and actions described
17  herein would cause bodily injuries to foreseeable passengers and
18  users of the helicopter like plaintiff.

19  57.   As a direct and proximate result of this negligence, plaintiff
20  has been injured and incurred damages in a sum to be proved at trial
21  but not less than $7 million, no part of which has been paid.

22                       **SECOND CAUSE OF ACTION**
23   **NEGLIGENT HIRING -2d RESTATEMENT OF TORTS SECTION 411**

23                  (Against Defendants LBG and TLBGI)

24  58.   Plaintiff incorporates by reference each and every allegation
25  contained in Paragraphs 1 through 57 as though fully set forth.

26  59.   Defendants LBG and TLBGI individually or together owed a duty
27  to plaintiff to exercise reasonable care and diligence in the hiring
28

1  of a competent and careful independent contractor for the purpose of
2  executing its own contractual duties under the Air Services Contract
3  to provide security to aircraft and personnel, which was work
4  involving a risk of physical harm to others unless this security
5  work was done carefully and skillfully.
6  60. Defendants LBG and TLBGI individually or together breached their
7  duty when they individually or together negligently and without
8  exercise of reasonable care and diligence failed to conduct any due
9  diligence, audit, screening, background investigation, consider the
10 experience level, suitability, knowledge of aircraft security
11 equipment, availability of security equipment and performance
12 background of USPI prior to engaging it to perform security duties
13 contractually undertaken by LBG and/or THLBI and thereby created an
14 unreasonable risk of injury to others including plaintiff.
15 61. As a direct and proximate result of this negligent hiring,
16 plaintiff has been injured and incurred damages to be proved at
17 trial but not less than $7 million, no part of which has been paid.
18
19                           **THIRD CAUSE OF ACTION**
    **NEGLIGENT HIRING –2d RESTATEMENT OF TORTS SECTION 427 and 427A**
20                     (Against Defendants LBG and TLBGI)
21 62.  Plaintiff incorporates by reference each and every allegation
22 contained in Paragraphs 1 through 61 as though fully set forth.
23 63.    Defendants LBG and TLBGI individually or together owed a duty
24 to plaintiff to exercise reasonable care and diligence in the hiring
25 of a competent and careful independent contractor for the purpose of
26 executing its own contractual duties under The Contract to provide
27 security to aircraft and personnel, which LBG and TLBGI knew or had
28 reason to know had danger inherent in the work as it involved

COMPLAINT

1   special physical harm danger to others including plaintiff unless

2   this security work was done carefully and skillfully.

3   64.   Defendants LBG and TLBGI individually or together breached

4   their duty when they individually or together negligently and

5   without exercise of reasonable care and diligence failed to conduct

6   any due diligence, audit, background investigation, screen, consider

7   resumes, consider the experience level, suitability, knowledge of

8   aircraft security equipment, availability of security equipment and

9   performance background of USPI prior to engaging this contractor to

10  perform security duties contractually undertaken by LBG and/or THLBI

11  and thereby creating an unreasonable risk of injury to plaintiff.

12  65.   As a direct and proximate result of the aforementioned

13  negligent hiring of USPI, plaintiff has been injured and incurred

14  damages to be proved at trial but not less than $7 million, no part

15  of which has been paid.

16

17                      **FOURTH CAUSE OF ACTION**
    <u>**NEGLIGENT RETENTION OF INDEPENDENT CONTRACTORS**</u>

18                  (Against Defendants LBG and TLBGI)

19  66.   Plaintiff incorporates by reference each and every allegation

20  contained in Paragraphs 1 through 65 as though fully set forth.

21  67.   Defendants LBG and TLBGI individually or together owed a duty

22  to plaintiff to exercise reasonable care and diligence in ceasing to

23  retain the services of its sub contractors after it learned that its

24  sub contractors failed to perform to the level of skill of a careful

25  and competent contractor and posed a potential danger if there was

26  continued retention.

27  68.   Defendants LBG and TLBGI individually or together breached

28  their duty when they individually or together negligently and

COMPLAINT                                                    19

1  without exercise of reasonable care and diligence failed to
2  terminate the services of USPI when they learned that USPI's
3  principals did not have backgrounds and experience in security, they
4  had no knowledge of aircraft security equipment, they had no
5  availability of security equipment and were not capable of providing
6  security to the aircraft and personnel and thereby by retaining the
7  services of USPI, defendants LBG and TLBGI created an unreasonable
8  risk of injury to others including plaintiff.

9  69.  Defendants LBG and TLBGI individually or together further
10 breached their duty when they individually or together negligently
11 and without exercise of reasonable care and diligence failed to
12 terminate the services of Air Serv when they learned that it had not
13 established any flight following procedure or established a radio
14 watch facility nor had it provided competent and qualified personnel
15 and done training to support the helicopters flying at LBG and/or
16 TLBGI's direction and being dispatched without any flight following
17 or radio communication into potentially hostile environments. By
18 continuing to retain the services of Air Serv when LBG and/or TLBGI
19 learned of these circumstances they created an unreasonable risk of
20 injury to others including plaintiff.

21 70. As a direct and proximate result of the aforementioned negligent
22 retention of USPI and Air Serv, plaintiff has been injured and
23 incurred damages in a sum to be proved at trial but not less than $7
24 million, no part of which has been paid.

25                    **FIFTH CAUSE OF ACTION**
                 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
26                      (Against All Defendants)

27 71.  Plaintiff incorporated by reference each and every allegation
28 contained in Paragraphs 1 through 70 as though fully set forth.

COMPLAINT                                                         20

72.   Defendants together and individually knew that their acts of failing to provide security of aircraft and personnel, flight following, train personnel to operate and establish a radio communication system and seek flight permissions before dispatch enabling defendants to determine if an air zone was restricted or prohibited would result in placing plaintiff in danger of physical injury or harm and yet defendants acted in complete disregard of these dangerous circumstances that they individually and collectively created and continued to let exist and allow plaintiff to be subjected to.

73.   As a proximate result of defendants' acts described in the previous paragraph and elsewhere in this complaint, plaintiff was placed in great fear for his life and was forced to suffer severe physical and psychological abuse and agony. As a result of this intentional infliction of emotional distress by defendants plaintiff has incurred damages in a sum to be proved at trial.

**SIXTH CAUSE OF ACTION**
PUNITIVE DAMAGES
(Against All Defendants)

74.   Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 74 as though fully set forth.

75.   At all material times herein defendants' acts were, deliberate, intentional, wanton, malicious and oppressive, and done with wanton disregard of the consequences to plaintiff, all for the purpose of defendants saving money and defendants acts should be punished by an award of punitive damages. Defendants together and individually knew that their acts of failing to provide security of aircraft and personnel, flight following, train personnel to operate and establish a radio communication system and seek flight permissions

COMPLAINT                                                                 21

1  before dispatch enabling defendants to determine if an air zone was
2  restricted or prohibited would result in placing plaintiff in danger
3  of physical injury or harm and yet defendants acted in complete
4  disregard of these dangerous circumstances that they individually
5  and collectively created and continued to let exist.

6      WHEREFORE, as a legal and proximate cause of the acts or
7  omissions of the defendants as set forth in this complaint,
8  plaintiff demands judgment as follows:

9    1. For general damages according to proof but no less than $7
10        million;

11   2. For special damages according to proof;

12   3. For punitive damages;

13   4. For costs of suit incurred herein; and

14   5. For such other and further relief as the court may deem proper.

16  A jury trial is hereby demanded on all issues

18  DATED: December 27, 2007

19                                    Paul Douglas Burke
                                      Via Carlo Emilo Gadda 95
20                                    00143 Rome
                                      Italy
21                                    Ph 0039 32 84710110

COMPLAINT

B
07 - 2335
HHK

# CIVIL COVER SHEET

JS-44
(Rev.l/05 DC)

## I (a) PLAINTIFFS

Paul Douglas Burke

7777

Italy

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Paul Douglas Burke
Via Carlo Emilo Gadda 95
00143 Rome
Italy Ph 0039 3208146464

## DEFENDANTS

Air Serv International, Inc; Louis Berger Group; The
Louis Berger Group, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:07-cv-02335
Assigned To : Kennedy, Henry H.
Assign. Date : 12/31/2007
Description: PI/Malpractice

JURY ACTION

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ◉ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

◉ **B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency
Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ **D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**      **OR**      ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General <br> □ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | □ 895 Freedom of Information Act <br> □ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act <br> □ 720 Labor/Mgmt. Relations <br> □ 730 Labor/Mgmt. Reporting & Disclosure Act <br> □ 740 Labor Railway Act <br> □ 790 Other Labor Litigation <br> □ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act) <br> □ 443 Housing/Accommodations <br> □ 444 Welfare <br> □ 440 Other Civil Rights <br> □ 445 American w/Disabilities-Employment <br> □ 446 Americans w/Disabilities-Other | □ 110 Insurance <br> □ 120 Marine <br> □ 130 Miller Act <br> □ 140 Negotiable Instrument <br> □ 150 Recovery of Overpayment & Enforcement of Judgment <br> □ 153 Recovery of Overpayment of Veteran's Benefits <br> □ 160 Stockholder's Suits <br> □ 190 Other Contracts <br> □ 195 Contract Product Liability <br> □ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Negligence, Negligent Hiring, Negligent Retention of Contractor, Intentional Infliction of Emotional Distress, filed under 28 USC Section 1331

**VII. REQUESTED IN COMPLAINT**  □ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ $7 million  Check YES only if demanded in complaint  JURY DEMAND:  YES [X]  NO □

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES □  NO [X]  If yes, please complete related case form.

DATE  December 28 2007  SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.